IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| IN-N-OUT BURGERS, a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CHADDERS RESTAURANT, an unknown entity; CSSR HOLDING, LLC, a Utah limited liability company; CHADDER'S HOLDING, LLC, a Utah limited liability company; and CHAD STUBBS, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND TEMPORARY RESTRAINING ORDER<br><br>Case No. 2:07-CV-394 TS |

I.  INTRODUCTION

To obtain the extraordinary remedy of mandatory injunctive relief altering the status quo, a movant must establish that its right to relief is clear and unequivocal by the heightened burden applicable to such a disfavored form of injunction.  In-N-Out Burgers seeks a temporary restraining order altering the status quo by mandating that Chadders

1

Restaurant (Chadders[1]) cease using In-N-Out's trademarks and elements of its alleged trade dress in its operations.  At this time, In-N-Out Burger has met its heightened burden for such relief only for the use of the alleged trademarks and, therefore, the Court will enter a temporary restraining order against Chadders use of the trademarks: Protein Style Burger, Animal Style Burger, 3 x 3 Burger, 4x 4 Burger and Double Double Burger.

## II.  FINDINGS OF FACT

A hearing was held on June 25, 2007.  The evidence at that hearing establishes the following for purposes of the Motion for a Temporary Restraining Order (TRO).  In-N-Out Burger operates a successful and well-known chain offering a simple menu of fast food in several states, but does not currently have a restaurant located in Utah.  In-N-Out has federally registered trademarks in the names Protein® Style Burger, Animal® Style Burger, 3 x 3® Burger, 4x 4® Burger and Double Double®.[2]  In-N-Out claims, as its trade dress; simple red-and-white menu boards with a plain type font and red border and lettering, a red-and-white color scheme with yellow accents on the exterior and interior of its restaurant, including use on walls, tiles, and seating structures, a gray and white tile checkerboard floor in its interiors, exteriors with a "California" tile roof (featuring orange pavers), and employee uniforms with red aprons and red hats or visors.  In-N-Out Burger serves food in what it alleges is a distinctive manner, which it alleges Chadders also uses.

---

[1]For the purpose of this Motion, the Court refers to all Defendants collectively as "Chadders."

[2]For the purposes of this Motion, Defendants have stipulated that "Double Double" is within the list of Plaintiff's Tradmarks.

Most, but not all, of In-N-Out Burger's restaurants feature a distinctive floor plan and exterior features and colors.

In-N-Out maintains rigorous quality control over its trademarks and products, including strict criteria regarding customer service and quality control standards. It maintains tight control over the use of its trademarks by, among other things, refusing to franchise its operations. Instead, it owns all In-N-Out restaurants. Its customer base is very loyal and has been built over its sixty years in business. The value of its intellectual property— trademarks—can only be maintained by continuing the high quality controls it maintains in all aspects of its operations.

Chadders opened in American Fork, Utah in May 2007. When it opened it had simple red-and-white menu boards with a plain type font, featuring a red border and lettering. It also had a red-and-white interior and exterior color scheme with yellow accents, including use of red and white on walls, tiles, and seating structures, a gray and white tile checkerboard floor in its interior, an exterior with a "California" tile roof (featuring orange pavers), and employee uniforms with red aprons and red hats or visors. In-N-Out alleges that Chadders uses In-N-Out's distinctive floor plan and exterior features and colors. Since Chadders Restaurant opened, In-N-Out has received several emails asking if Chadders Restaurant was affiliated with In-N-Out. One email stated that a customer purchased food from Chadders Restaurant using one of In-N-Out's trademarked names.

On June 7, 2007, In-N-Out's General Counsel traveled to Chadders Restaurant,

viewed the premises and operations and ordered a meal not listed on its menu. He requested an "Animal Style Double Double with Animal fries,"[3] and his order was filled.

In-N-Out filed this action on June 14, 2007, alleging trade dress infringement, federal trademark infringement, and violation of the Utah Unfair Competition Act. The Complaint seeks damages and injunctive relief against the use of In-N-Out's trademarks and claimed trade dress. In-N-Out filed the present Motion for a TRO the same day. The Complaint and Motion for a TRO were served on Chadders on June 15, 2007.[4]

Between the filing of this case and the TRO hearing, Chadders changed the following: the color of its employees' aprons and hats from red to blue; the border of its menu boards and other signs from red to blue; the background color of its menu board from white to yellow; the font on its menu board; and the trim color on its outside signs from red to blue.

Chadders generally disputes that it has made use of In-N-Out's trademarks on the basis of Chadders' counsel's proffer that Chadders had instructed its employees not to do so. However, the Court finds that such use was made on at least two occasions.

### III.  DISCUSSION

A.  Parties' Positions

In-N-Out contends it has established that it is entitled to a TRO prohibiting Chadders from operating its restaurant using elements of its trade dress and using its trademarks.

---

[3] Trans. at 36-38.

[4] *See* Docket Nos. 8-11 (summons returns showing service of Complaint and TRO on all defendants).

Chadders disputes that In-N-Out has met its heightened burden for the grant of a mandatory injunction altering the status quo and granting the same injunctive relief it seeks for permanent injunctive relief on the merits. Chadders disputes that In-N-Out has established that it has a protectable trade dress in the items it claims, including its method of serving food, use of gray and white tiles, use of the red and white color scheme in the interiors and exteriors, and the use of red aprons and hats. Chadders contends that even if an In-N-Out trade dress is established, it consists of elements not used by Chadders such as the palm-tree motif.

At the hearing, Chadders' counsel agreed, without conceding that there had been any such use, that it would stipulate to not use In-N-Out's trademarks in the future.[5]

B. TRO STANDARD

A TRO and a preliminary injunction share the same standard.[6]

"'A preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal.'"[7]

> In order for a party to be entitled to a preliminary injunction, that party must show . . . (1) he or she will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would

---

[5]Counsel agreed to confer and submit a stipulated order regarding non-use. They have not been able to agree on such language and have instead submitted their respective proposed language.

[6]*Bachman By and through Bachman v. West High School*, 900 F.Supp. 248, 250 (D. Utah 1995) *aff'd* 132 F.3d 542 (10th Cir. 1997).

[7]*Nova Health Systems v. Edmondson,* 460 F.3d 1295, 1298 (10th Cir. 2006) (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir.1991))).

not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.[8]

"[C]ertain 'disfavored preliminary injunctions' require a movant to 'satisfy a heightened burden.'"[9]  One such "disfavored" injunction is an injunction seeking to "alter the status quo."[10]  Other such "disfavored" preliminary injunctions are those that are mandatory and those that "give the movant all relief it could obtain after a trial on the merits."[11]

C.  Trademark Claim

For the purposes of the TRO, the Court finds that Plaintiff has shown that it is likely to succeed on the merits of its claim of a violation of the trademark claim by Chadders' use of its trademark.

> The party alleging infringement has the burden of proving likelihood of confusion.  Ordinarily, to prevail on a trademark infringement claim, a plaintiff must demonstrate that a defendant's use of the trademark is likely to cause consumers to believe either that the plaintiff is the source of the defendant's products or services (direct confusion), or alternatively, that the defendant is the source of the plaintiff's products or services (reverse confusion).[12]

---

[8] *Schrier*, 427 F.3d at 1258 (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)).

[9] *Nova Health Systems*, 460 F.3d at 1298 at n.5 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)).

[10] *O Centro*, 389 F.3d at 975.

[11] *Id.*

[12] *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006).

The parties agree that after the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.,*[13] irreparable injury is no longer presumed from a finding of likelihood of success on the merits of a claim of infringement of trademark or trade dress claim. In-N-Out has shown that it has federally protected trademarks, that Chadders has used at least one of the trademarks on at least one occasion after Chadders says that it instructed its employees not to use them, and that there is likely to be consumer confusion as to the source of the products.

The Court finds that In-N-Out has shown that it will suffer irreparable injury unless the TRO against the use of its trademark is issued. This threatened injury to In-N-Out's control over the quality of the product that bears their mark is irreparable. Further, the extent of loss of consumer goodwill and reputation that In-N-Out could suffer from the use of its marks or the diversion of customers is largely unquantifiable.

The Court finds that the threatened injury to In-N-Out far outweighs whatever damage the proposed injunction against the use of the trademarks may cause Chadders because Chadders represents that it has no intention of using the marks. The Court finds that such an injunction, if issued, would not be adverse to the public interest.

The Court next turns to In-N-Out's claim for an injunction regarding trade dress.

D.  Trade Dress Claim

> Trade dress refers generally to the total image, design, and appearance of a product and "may include features such as size, shape, color, color combinations, texture or graphics." It is well settled that restaurants and

---

[13] 126 S.Ct. 1837, 1840-41 (2006) (patent case).

similar establishments may have a total visual appearance that constitutes protectable trade dress.

* * *

To sustain a claim for trade dress infringement, [Plaintiff] must prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion.[14]

The Court finds that, at this time, In-N-Out has not met its heightened burden of showing that it is entitled to an injunction against the use of its claimed trade dress because it has not shown that it is likely to succeed on the merits of its claim of infringement of trade dress.  Further, where Chadders has already changed some of the elements that In-N-Out alleges infringes its trade dress, it has not been established that In-N-Out will suffer irreparable harm in the future if the injunction is not issued.

The Court notes Chadders' counsel represented at the hearing that Chadders had instructed its employees not to use In-N-Out's trademarks before the TRO was filed. Under these circumstances, the Court finds that the sum for the payment of costs and damages that may be incurred or suffered by Chadders if found to have been wrongfully enjoined or restrained from using the trademarks is zero.  Accordingly, the Court will not require a bond.

## IV. CONCLUSION AND ORDER

In-N-Out has shown that it is entitled to a TRO.  It is therefore

---

[14] *Clicks Billiards, Inc. v. Sixshooters, Inc.*. 251 F.3d 1252, 1257-58 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A.*, Inc., 4 F.3d 819, 822 (9th Cir. 1993)) (internal citations and footnote omitted).

ORDERED that Plaintiff In-N-Out Burger's Motion for a Temporary Restraining Order (Docket No. 4) is GRANTED IN PART and is otherwise DENIED.

## V.  TEMPORARY RESTRAINING ORDER

IT IS THEREFORE ORDERED that Defendants Chadders Restaurant, CSSR Holding, LLC, Chadder's Holding, LLC, and Chad Stubbs, and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Order are hereby restrained from operating Chadder's Restaurant, in American Fork, Utah while doing the following: selling, offering for sale, advertising, or fulfilling any order placed by a customer using any of the following terms:  "Animal", "Protein", "3x3", "4x4," and/or "Double Double."  It is further

ORDERED that any customer requesting a product or style of preparation using these terms shall be advised that Chadder's does not offer such product or style of preparation and shall be referred to the Chadder's menu.  It is further

ORDERED that this Temporary Restraining Order shall expire ten days from its entry unless during that time the parties stipulate to its continuance, or the Court, upon motion of a party, extends it for cause shown.

DATED  June 29, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge